UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 2:20-cr-135-FtM-66MRM
  18 U.S.C. § 1347
FERNANDO ESPINOSA LEON  18 U.S.C. § 1028A(a)(1)

## INDICTMENT

The Grand Jury charges:

### COUNTS ONE THROUGH SIX
(Health Care Fraud)

### Introduction

At times material to this Indictment:

1. The defendant, Fernando Espinosa Leon ("Leon"), was a resident of Florida. He was also the president, registered agent, and sole owner of Global Medical Supply, Inc. Leon had no medical licenses or training.

2. Global Medical Supply Inc. ("Global Medical") was a Florida Corporation purportedly doing business as a Durable Medical Equipment ("DME") company at 1617 Santa Barbara Boulevard, Unit #8, Cape Coral, Florida. Global Medical billed Medicare and caused Medicare to be billed for DME that it supposedly provided to Medicare beneficiaries who resided in the Middle District of Florida and elsewhere. In truth and in fact, Global Medical

had no physical location and provided no goods and services. Global Medical maintained a bank account ending in 3873, over which Leon was the sole signatory, and to which Medicare directed payment for claims submitted to it by Global Medical.

The Medicare Program

3. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

4. Medicare had four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D). Medicare Part B covered, among other things, durable medical equipment ("DME") that was medically necessary and ordered by licensed medical doctors or other qualified health care providers. DME was equipment designed for a medical purpose, such as wound care supplies and orthotics.

5. For Florida beneficiaries, Medicare Part B insurance covering DME and related health care benefits, items, and services was administered by CGS Administrators, LLC (hereinafter "CGS"), pursuant to a contract with CMS. Among CGS' responsibilities, it received, adjudicated, and paid the claims of authorized DME suppliers that were seeking reimbursement for the cost of DME and other health care benefits, items, or services supplied or provided to Medicare beneficiaries.

DME Claims Submitted under Medicare Part B

6. Medicare assigned a unique health insurance claim number ("HICN") to each beneficiary for billing and identification purposes. The HICN consisted of the social security number of the beneficiary. For a claim to be processed by Medicare, the HICN had to be valid and belong to an actual person. Each beneficiary's name and HICN was a means of identification, as defined in 18 U.S.C. § 1028(d)(7).

7. Physicians or non-physician practitioners who certified the beneficiary's need for DME were also assigned unique identification numbers, which consisted of a National Provider Identifier ("NPI") and/or a Unique Physician Identification Number ("UPIN"). These identification numbers were also used for billing and identification purposes. Each practitioner's NPI or UPIN was a means of identification, as defined in 18 U.S.C. § 1028(d)(7).

8. DME companies, physicians, and other health care providers that sought to participate in Medicare Part B and bill Medicare for the cost of DME and related benefits, items, and services were required to apply for and receive a "provider number" (or "supplier number"). In the application, the provider acknowledged that to be able to participate in the Medicare Program, the provider must comply with all Medicare-related laws and regulations.

9. The provider number allowed a DME company to submit bills, known as "claims," to Medicare to obtain reimbursement for the cost of DME and related health care benefits, items, and services that a DME company had supplied to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and HICN, the services that had been performed for the beneficiary, the date the services were provided, the cost of the services, and the name and NPI or UPIN of the physician or health care provider who ordered the services.

10. To receive payment from Medicare, a DME company, using its provider number, would submit a health insurance claim form, known as a CMS-1500. Medicare permitted DME companies, or a designated third-party biller, to submit a claim electronically or by way of a paper claim form. The CMS-1500 required DME companies to provide certain important information, including: (a) the Medicare beneficiary's name and HICN; (b)

the name and NPI or UPIN of the doctor or other qualified health care provider who ordered the health care benefit, item, or service that was the subject of the claim; (c) the health care benefit, item, or service that was provided or supplied to the beneficiary; (d) the billing codes for the benefit, item, or service; and (e) the date upon which the benefit, item, or service was provided or supplied to the beneficiary.

11. When a CMS-1500 was submitted, usually in electronic form, the provider certified that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare Program.

12. Medicare, through CGS, would generally pay a substantial portion of the cost of the DME or related health care benefits, items, and services that were medically necessary and ordered by licensed doctors or other licensed, qualified health care providers.

13. Payments under Medicare Part B were often made directly to the DME company rather than to the beneficiary. For this to occur, the beneficiary would assign the right of payment to the DME company or other health care provider. Once such an assignment took place, the DME company would assume the responsibility for submitting claims to, and receiving payments from, Medicare.

14. If the DME company's Medicare claim was approved, a substantial portion of the total amount of the claim was paid either by check or by wire transfer to an account designated by the DME company.

### The Scheme and Artifice

15. Beginning on an unknown date, but at least in or about June 2020, and continuing through and including the date of this Indictment, in the Middle District of Florida, and elsewhere, the defendant,

FERNANDO ESPINOSA LEON,

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined 18 U.S.C. § 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, that is, the defendant, through Global Medical, caused the submission of false and fraudulent claims to Medicare, seeking reimbursement for the cost of various DME items and services.

### Manner and Means of the Scheme and Artifice

16. The manner and means by which the defendant sought to accomplish the purpose of the scheme and artifice included, among others, the

following:

    a. It was part of the scheme and artifice to defraud that the defendant would and did own and operate Global Medical for the purpose of committing healthcare fraud.

    b. It was further part of the scheme and artifice to defraud that the defendant would and did fraudulently use the means of identification of Medicare beneficiaries, such as their names and HICNs, to submit and cause the submission of false and fraudulent claims to Medicare for DME that was not prescribed by licensed health care providers and never provided to the beneficiaries.

    c. It was further part of the scheme and artifice to defraud that the defendant directed and caused Medicare to make payments to Bank Account ending in 3873, over which he had control, as a result of the false and fraudulent claims submitted and caused to be submitted by Global Medical.

    d. It was further part of the scheme and artifice to defraud that, from in or about June 2020 to in or about September 2020, the defendant would and did submit and cause the submission of approximately $7,688,500.00 in false and fraudulent claims for DME-related reimbursements purportedly provided by Global Medical.

    e. It was further part of the scheme and artifice to defraud that, based

on these claims, the defendant would and did cause Medicare to direct to Bank Account ending in 3873, approximately $4,013,148.76 as payment for the false and fraudulent claims.

f. It was further part of the scheme and artifice to defraud that, after Medicare deposited funds into a bank account controlled by the defendant, the defendant would and did distribute money to himself and others.

g. It was further part of the scheme and artifice to defraud that the defendant would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme, the acts committed in furtherance of the scheme, and the proceeds therefrom.

## Execution of the Scheme and Artifice

17. On or about the dates set forth as to each count below, in the Middle District of Florida, and elsewhere, the defendant,

FERNANDO ESPINOSA LEON,

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care

benefit program, in that he submitted and caused the submission of false and fraudulent Medicare claims seeking reimbursement for the cost of DME that was not prescribed by doctors or provided to Medicare beneficiaries as claimed:

| COUNT | DATE OF CLAIM SUBMISSION | BENEFICIARY | CLAIM NUMBER AND DME BILLED | AMOUNT BILLED |
|---|---|---|---|---|
| ONE | 6/16/2020 | H.C. | 120168765563000 Tension based Scoliosis orthosis and accessory pads | $3,200.00 |
| TWO | 6/16/2020 | H.C. | 120168765563000 Halo procedure, cervical halo incorporated into Milwaukee type orthosis | $3,000.00 |
| THREE | 6/16/2020 | J.C. | 120168765571000 Tension based Scoliosis orthosis and accessory pads | $3,200.00 |
| FOUR | 6/16/2020 | J.C. | 120168765571000 Halo procedure, cervical halo incorporated into Milwaukee type orthosis | $3,000.00 |
| FIVE | 6/18/2020 | N.M. | 120170767139000 Tension based Scoliosis orthosis and accessory pads | $3,200.00 |

| SIX | 6/18/2020 | N.M | 1201707671390000 Halo procedure, cervical halo incorporated into Milwaukee type orthosis | $3,000.00 |

All in violation of 18 U.S.C. §§ 1347 and 2.

## COUNTS SEVEN THROUGH NINE
### (Aggravated Identify Theft)

On or about the dates set forth as to each count below, in the Middle District of Florida, and elsewhere, the defendant,

FERNANDO ESPINOSA LEON,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, that is the health insurance claim numbers identified below belonging to Medicare beneficiaries described below, during and in relation to the felony offense of health care fraud, in violation of 18 U.S.C. § 1347, knowing that such means of identification belonged to an actual person:

| COUNT | DATE | MEANS OF IDENTIFICATION |
|---|---|---|
| **SEVEN** | 6/16/2020 | Unauthorized use of health insurance claim number ending in 2041A belonging to H.C. |
| **EIGHT** | 6/16/2020 | Unauthorized use of health insurance claim number ending in 6984A belonging to J.C. |
| **NINE** | 6/18/2020 | Unauthorized use of health insurance claim number ending in 8756A belonging to N.M. |

All in violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

## FORFEITURE

1. The allegations contained in Counts One through Six above are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(7).

2. Upon conviction of a violations of 18 U.S.C. § 1347, the defendant,

FERNANDO ESPINOSA LEON,

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3. The property to be forfeited includes, but is not limited to; an order of forfeiture in the amount of at least $4,013,148.76, which represents the proceeds the defendant personally obtained from the offenses.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL,

███████████████████

Foreperson

MARIA CHAPA LOPEZ
United States Attorney

By: _____
Trenton J. Reichling
Assistant United States Attorney

By: _____
Jesus M. Casas
Assistant United States Attorney
Chief, Fort Myers Division

FORM OBD-34
December 20

No. _____

# UNITED STATES DISTRICT COURT
Middle District of Florida
Fort Myers Division

THE UNITED STATES OF AMERICA

vs.

FERNANDO ESPINOSA LEON

## INDICTMENT

Violations: 18 U.S.C. § 1347,
18 U.S.C. § 1028A(a)(1)

_____
Foreperson

Filed in open court this 16th day

of December, 2020.

_____
Clerk

Bail $ _____

GPO 863 525